UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRISTINA COULSON,

       Plaintiff,                                 Hon. Janet T. Neff

v.                                                          Case No. 1:10-CV-275

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
                                         /

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 34 years of age at the time of the ALJ's decision. (Tr. 22, 64). She completed the tenth grade and worked previously as a housekeeper. (Tr. 20, 78, 409).

Plaintiff applied for benefits on May 3, 2004, alleging that she had been disabled since April 1, 2004, due to depression and back problems. (Tr. 64-66, 77). Plaintiff's application was denied, following a hearing, by ALJ Charles Reite. (Tr. 273-81, 367-402). The Appeals Council later remanded the matter for further consideration. (Tr. 308-11). On December 18, 2008, Plaintiff appeared before ALJ B. Lloyd Blair, with testimony being offered by Plaintiff and vocational expert, Sharon Princer. (Tr. 403-27). In a written decision dated February 9, 2009, the ALJ determined that Plaintiff was not disabled. (Tr. 13-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 6-8). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On April 19, 2004, Plaintiff reported to the Cristo Rey Family Health Clinic. (Tr. 153). Plaintiff reported that "she needs to be seen for nerves and depression." (Tr. 153). Plaintiff reported that she used to take Paxil but "took [her]self off." (Tr. 153). Plaintiff indicated that she

3

"wants to restart Paxil because [her] symptoms are worsening." (Tr. 153). Plaintiff was prescribed Paxil. (Tr. 153). Following a May 11, 2004, examination, Plaintiff's Paxil dosage was increased. (Tr. 152). Following a September 21, 2004 examination, Plaintiff was instructed to participate in counseling. (Tr. 221-22).

On February 8, 2005, Plaintiff was treated at Ingham Community Health Centers. (Tr. 199-200). Plaintiff reported that she needed "something for anxiety" because her Paxil was "not working." (Tr. 199). Plaintiff's Paxil was discontinued and she was instead prescribed Xanax, Lexapro, and Elavil. (Tr. 199-200).

On March 5, 2005, Plaintiff reported to the emergency room complaining of low back pain. (Tr. 165-66). The results of an examination were unremarkable. (Tr. 165). Plaintiff exhibited full range of motion with no evidence of weakness or sensory loss. (Tr. 165). Straight leg raising was negative and Plaintiff ambulated "well." (Tr. 165). Plaintiff reported that her current medication was ""not helping" and she "wants something stronger." (Tr. 165). Plaintiff was provided with anti-inflammatory medication and instructed to "do back exercises." (Tr. 165-66).

On March 8, 2005, Plaintiff was treated at Ingham Community Health Centers. (Tr. 197-98). Plaintiff reported that she was experiencing back pain. (Tr. 197). Plaintiff reported that her current medications were not working. (Tr. 197). Plaintiff was instructed to attend physical therapy. (Tr. 198). On March 22, 2005, Plaintiff attended an initial physical therapy evaluation. (Tr. 231-32). Plaintiff failed to attend any of her subsequent physical therapy appointments, however, and was subsequently discharged from the program. (Tr. 231-32).

X-rays of Plaintiff's lumbar spine, taken on April 25, 2005, revealed "minor" disc bulging at the "mid and lower lumbar levels without central canal stenosis." (Tr. 249).

Following a May 17, 2005 examination, Plaintiff's medications were again modified. (Tr. 195-96). Specifically, Plaintiff's prescriptions for Xanax and Elavil were discontinued, she was prescribed Klonopin, and her Lexapro dosage was increased. (Tr. 195-96). On July 14, 2005, Plaintiff reported that Lexapro "seem[s] to be helping" and that she "likes" Klonopin. (Tr. 191). Following a September 8, 2005 examination, Plaintiff was instructed to participate in physical therapy and counseling. (Tr. 187-88).

On December 13, 2005, Plaintiff reported that Lexapro was "working ok." (Tr. 244). On January 10, 2006, Plaintiff reported that she was "slightly anxious" but "doing ok though." (Tr. 243). Plaintiff's Klonopin dosage was increased the following month. (Tr. 242).

On February 22, 2006, Plaintiff participated in an MRI examination of her lumbosacral spine, the results of which revealed "mild" desiccation and disc space loss at L4-5, but were otherwise unremarkable. (Tr. 246).

On August 9, 2006, Plaintiff participated in a consultive examination conducted by Steve Geiger, Ph.D. (Tr. 252-56). Plaintiff reported that she was unable to work because "I can't stand people, my anxiety, people are out to get me, I take medication." (Tr. 252). Plaintiff reported that she experienced depression and panic attacks. (Tr. 252).

Plaintiff reported that she drinks "a 12 pack of beer two to three times a week" and has experienced "family and work problems because of her drinking." (Tr. 252-53). Plaintiff reported that "she continues to drink even though she knows it has negative consequences for her" and "knows she's not supposed to be using alcohol while taking her medications." (Tr. 253). Plaintiff also reported that she "has a compulsion to gamble" and "spends about $120 per month" on lottery tickets. (Tr. 253).

5

Plaintiff was "unpleasant" and reported that "all people are out to get me." (Tr. 254). The doctor reported that Plaintiff appeared depressed, anxious, angry, and suspicious. (Tr. 254). Plaintiff was diagnosed with (1) psychotic disorder; (2) alcohol dependence; (3) depressive disorder; (4) panic disorder without agoraphobia; and (5) pathological gambling. (Tr. 255). Her GAF score was rated as 50.[1] (Tr. 256).

Dr. Geiger also completed a Statement of Ability to do Work-Related Activities (Mental) form regarding Plaintiff's non-exertional limitations. (Tr. 257-59). With respect to Plaintiff's ability to understand, remember, and carry out simple instructions, the doctor reported that Plaintiff experienced no limitations. (Tr. 257). The doctor reported that Plaintiff experienced "slight" limitation in her ability to make judgements on simple work-related decisions, but experienced "marked" limitation in her ability to understand, remember, and carry out complex instructions. (Tr. 257). Dr. Geiger reported that Plaintiff experienced "marked" limitations in her ability to interact appropriately with the public and co-workers and "extreme" limitations in her ability to interact appropriately with supervisors or respond appropriately to work pressures or changes in routine work setting. (Tr. 258). Dr. Geiger also reported that Plaintiff's alcohol abuse "make[s] her symptoms of psychosis, depression and anxiety worse." (Tr. 258).

On August 30, 2006, Plaintiff was examined by Dr. Elaine Kountanis. (Tr. 261-63). Plaintiff reported that she experiences back pain "all the time and rates it 10/10." (Tr. 261). Plaintiff also reported that she experiences anxiety "all the time." (Tr. 261). Plaintiff exhibited "normal" strength and straight leg raising was negative. (Tr. 263). Plaintiff exhibited no sensory,

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

reflex, or coordination impairments. (Tr. 263). Babinski[2] testing was negative and Plaintiff exhibited "normal" range of motion in "all areas including the entire spine." (Tr. 263). Dr. Kountanis concluded that Plaintiff can frequently lift 20 pounds, balance, kneel, crouch, crawl, and stoop. (Tr. 264-65). The doctor further concluded that Plaintiff's ability to stand, walk, sit, or perform manipulative functions are not affected by her alleged impairment. (Tr. 264-66).

Treatment notes dated October 11, 2006, indicate that Plaintiff suffers from "fairly mild" arthritic and degenerative changes in her lower back. (Tr. 340).

On February 26, 2007, Plaintiff reported that her depression and anxiety were "stable" on her current medications (Elavil and Klonopin). (Tr. 358).

On May 19, 2007, Plaintiff participated in an MRI examination of her lumbar spine, the results of which revealed "mild" degenerative changes with no evidence of significant canal stenosis. (Tr. 360-61).

On March 21, 2008, Plaintiff participated in a second consultive examination conducted by Steve Geiger, Ph.D. (Tr. 320-23). Plaintiff reported that she was unable to work due to "anxiety, back, depression, alcoholism a lot more lately, my daughter running away, restless leg syndrome, I can't stand people. People are out to get me, they try hurt, everyone is out to get me." (Tr. 320). Plaintiff reported that she was experiencing depression and panic attacks. (Tr. 320). Plaintiff reported that she consumed 12 beers the previous day and "drinks everyday that I can [afford] it." (Tr. 321). Plaintiff also reported that she "continues to have a problem with gambling," as she "gamble[s] everyday." (Tr. 321). Plaintiff reported that she had never been hospitalized in

---

[2] Babinski test is a neurological test designed to discern damage to the central nervous system. *See* Babinski, available at http://www.medterms.com/script/main/art.asp?articlekey=7171 (last visited on March 2, 2011).

a psychiatric or substance abuse treatment unit. (Tr. 321). Dr. Geiger reported that Plaintiff appeared depressed, lethargic, suspicious, and very angry. (Tr. 322). Plaintiff was diagnosed with (1) psychotic disorder; (2) alcohol dependence; (3) depressive disorder; (4) panic disorder with agoraphobia; and (5) pathological gambling. (Tr. 323). Her GAF score was rated as 48.[3] (Tr. 323).

At the administrative hearing, Plaintiff testified that she is unable to work due to "anxiety, depression, [and] lots of back problems." (Tr. 411). Plaintiff testified that she was not presently treating with a psychiatrist and last treated with a psychiatrist "a couple of years ago." (Tr. 413). Plaintiff also testified that she was not presently taking any medication to treat her anxiety. (Tr. 414). Plaintiff testified that she experiences "constant" back pain that rates 8.5 on a scale of 1-10. (Tr. 412-13). Plaintiff also testified that she drinks "a lot," which she defined as "maybe a 30-pack of beer" over "six hours." (Tr. 415).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffers from (1) degenerative changes and disc protrusions of the lumbar spine; (2) obesity; (3) alcohol dependence; and (4) mood, anxiety, and psychotic disorders, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 15-18). The ALJ concluded that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 18-22).

---

[3] A GAF score of 48 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the

---

[4] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[5] subject to the following limitations: (1) Plaintiff can only occasionally bend, twist, or turn at the waist; (2) she is limited to performing work involving 1, 2, or 3 step instructions; (3) Plaintiff cannot carry out jobs that entail concentration on detailed/precision tasks or multiple/simultaneous tasks; (4) she cannot perform work that requires reading, computing, calculating, problem solving or reasoning; and (5) she is unable to preform jobs involving quotas mandating a specific number of pieces hourly or a position that has a co-worker dependent on Plaintiff's productivity. (Tr. 18). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a

---

[5] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Sharon Princer.

The vocational expert testified that there existed approximately 21,800 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 422-23). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The vocational expert further testified that if Plaintiff were further limited in that she required a sit-stand option, there still existed 12,200 jobs that she could perform. (Tr. 423).

        a.        The ALJ Properly Evaluated the Medical Evidence

As noted above, Plaintiff twice participated in consultive examinations conducted by Steve Geiger, Ph.D., who concluded that Plaintiff is impaired to an extent beyond that recognized by the ALJ. Plaintiff asserts that the opinions expressed by Dr. Geiger establish that she is disabled and that the ALJ erred by failing to accord sufficient weight to such. The ALJ accorded "limited weight" to Dr. Geiger's opinions as such were inconsistent with the record as a whole. (Tr. 20).

As is well recognized, the treating physician doctrine "is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 506 (6th Cir. 2006). When assessing whether an opinion from a care provider is entitled to deference, the question is not whether the care provider later established a "treating physician" relationship with the claimant, but instead whether such relationship existed as of the date the opinion in question was rendered. As the Sixth Circuit has observed:

> But the relevant inquiry is not whether [the doctor] might have become a treating physician in the future if [the claimant] had visited him again. The question is whether [the doctor] had the ongoing relationship with [the claimant] to qualify as a treating physician *at the time he rendered his opinion*."

*Id.*

Accordingly, "a single visit [to a care provider] does not constitute an ongoing treatment relationship." *Id.* Moreover, "depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Id.* at 506-07.

Plaintiff does not assert that Dr. Geiger was her treating physician, but instead argues that "Dr. Geiger's opinion is consistent with the rest of the relevant evidence and is sufficient evidence of disability." The Court is not persuaded. First, because Dr. Geiger was not a treating physician, his opinions are entitled to no special deference. Second, as the ALJ concluded, Dr. Geiger's opinions are not consistent with the evidence of record. As discussed above, the record reflects that when Plaintiff abstains from excessive alcohol use and takes her medications as

instructed, she is able to function to the degree recognized by the ALJ in his RFC determination. As the ALJ further observed, none of Plaintiff's treating physicians imposed on her work-preclusive limitations.

Plaintiff further asserts that the ALJ failed to assess Dr. Geiger's opinion as directed by the relevant regulation. Pursuant to regulation, when evaluating opinion evidence the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. § 416.927. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450. A review of the ALJ's decision reveals that the ALJ considered these factors in evaluating Dr. Geiger's opinion.

In sum, substantial evidence supports the ALJ's decision to accord limited weight to the opinions expressed by Dr. Geiger.

b. The ALJ Properly Discounted Plaintiff's Subjective Allegations

The ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 19). Plaintiff asserts that the ALJ improperly discounted her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from severe impairments. However, as the ALJ recognized, Plaintiff's subjective allegations of disabling pain and limitation are not supported by the record. The objective medical evidence fails to support Plaintiff's subjective allegations regarding her alleged physical limitations. As the ALJ noted, none of Plaintiff's treating physicians imposed work-preclusive limitations on Plaintiff. The ALJ also observed that Plaintiff's reported activities were inconsistent with her subjective allegations. As for Plaintiff's subjective allegations regarding her emotional impairments, the ALJ accurately concluded:

> The claimant clearly has some psychological difficulties, but the overall evidence in the record does not suggest or establish that she lacks suitable concentration, memory, adaptive, basic cognitive or interpersonal skills for vocational involvement that is simple and routine in nature, as depicted in the residual functional capacity adopted. The claimant was not psychiatrically hospitalized, and did not participate in regular counseling or outpatient [treatment]. The claimant indicated at the hearing that she had attempted to involve herself in treatment, but that she had been unable to due to insurance concerns. This contention is not convincing. The claimant's local Community Mental Health Agency charges individual's (sic) on their ability to pay. Moreover, if finances were an impediment to

15

> obtaining appropriate healthcare for the claimant, she could certainly have limited her purchases of tobacco, daily lottery tickets, and significant quantities of alcohol.

(Tr. 19).

In sum, the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: April 6, 2011
    /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge